## THOMAS J. LOBDELL *vs.* ELIPHALET BAKER.

The holder of a note, who fraudulently procures it to be indorsed by a minor, and afterwards sells it to a person who relies on the validity of such indorsement, is liable to an action by such person, though, at the time of sale, he had no fraudulent intent. Selling the note without erasing such indorsement, or disclosing the minority of the indorser, is tantamount to a direct affirmation by the seller, that the indorsement constitutes a valid contract.

Where a *broker* makes a sale in the usual line of his business, his representations bind his principal, although they are made contrary to the principal's express instructions; unless such instructions are known to the purchaser. *Aliter*, in case of particular and special agents.

In an action against one for selling a note which he had fraudulently procured to be indorsed by a minor, the plaintiff may give evidence of the declarations, made at the time of the sale, by the broker whom the defendant employed to sell the note, concerning the character of the note and the parties thereto.

Where, in the trial of such action, evidence was admitted, that the defendant was a man of sudden impulses, and that, within two or three minutes after procuring such indorsement, he expressed his regret that he had so done ; an exception to the admission of such evidence was held not to be well founded.

TRESPASS upon the case. The declaration alleged, that in February, 1837, the defendant was possessed of a promissory note, dated the 3d day of said month, for $2,775·89, made by Hicks, Lawrence, & Co. of New York, and payable in four months, to J. J. A. Bruce of New York, or order, and indorsed in blank by the payee : That the defendant, with a design to deceive, defraud, and injure all persons who might thereafter become the purchasers of said note, and to cause them to purchase it with a belief that it was indorsed, in addition to the indorsement of said payee, by another person, whose indorsement was valid and could not be avoided, procured one Joseph Swan, Jr., a minor, in the defendant's employ, and known by the defendant to be a minor, to indorse the same in blank ; and afterwards, by his agent, B. Winslow, a broker, offered to sell said note to one Stearns, who, relying on said Swan's indorsement as valid, &c. purchased the same : That the plaintiff, on the 11th of March, 1837, relying on said Swan's indorsement of said note as effectual and not capable of being avoided, and in consideration thereof, purchased said note of said Stearns : That when the note became due, the makers thereof, though demand was

made on them, failed to pay ; and that Bruce, the first indorser, though notice was duly given to him, refused to pay : That the plaintiff commenced an action against said Swan, as indorser of said note, who pleaded and proved his infancy, and obtained a verdict, and recovered judgment against the plaintiff for costs.

At the trial before *Wilde*, J., the plaintiff produced the note, proved the demand on the makers and due notice to the indorsers, and exhibited the record of the judgment in his suit against Swan. He then called Swan as a witness, who testified that he indorsed the note, and also two other notes made and indorsed by the same parties, amounting to about $ 7,000, at the defendant's request, who called him to the desk and asked him if he was afraid to indorse them, to which he replied that he was not, and thereupon put his name on them, and nothing more was said ; that he was then eighteen years of age, and had been a year or two in the defendant's employment ; that he had an uncle in New York, Caleb Swan, of the firm of Stone, Swan, & Mason, an old established house, which was dissolved about that time.

Upon cross-examination, the defendant's counsel were permit ted (the plaintiff's counsel objecting,) to ask this witness if the defendant was not a man of sudden impulses and movements, and the witness answered that he was.

The plaintiff introduced testimony tending to show that Stearns (who purchased the three notes of Winslow, and sold one of them, through Winslow, to the plaintiff,) relied, at the time when he purchased, on the makers, and also on Swan the indorser, supposing him to be of the firm of Stone, Swan, & Mason ; all which was denied by the defendant, who introduced evidence tending to impeach the witness who gave this testimony.

The plaintiff also introduced testimony to show, that when the defendant gave Winslow the notes to sell, he stated that they were New York business paper ; and that when asked by Winslow if Swan was of the firm of Stone, Swan, & Mason, the defendant replied, " he is not, or, I do not know." All this also, was denied by the defendant, and the testimony in relation to it was contradictory.

The defendant introduced testimony tending to show, that to an inquiry by Winslow, before the sale of the note, who Joseph Swan, Jr. was, the defendant replied, " that name is nothing, the notes are good enough without." A clerk of the defendant also testified, that he was present when the notes were indorsed by Swan ; that the defendant called Swan to the desk and asked him if he had any objection to indorse them, who answered that he had not, and put his name thereon, and immediately went away. The defendant's counsel were permitted (the plaintiff's counsel excepting thereto,) to inquire of this witness as to the defendant's declaration immediately after Swan left the desk, and not in his hearing ; and the witness stated that, two or three minutes afterwards, the defendant said he was sorry he had got Joseph to indorse the notes, but it would do no harm ; and that the notes were then put away.

The defendant called P. Alden, one of his partners, and inquired of him respecting a conversation between him (Alden) and Winslow, when the defendant was not present, which inquiry the judge allowed the witness to answer, although the plaintiff's counsel objected. The witness testified, that Winslow came to the store, and, in conversation with him, said there was a name on the notes which was not on his memorandum, and asked if he was a responsible person ; and that the witness replied that it did not make the notes any better, they were good enough without it. This statement was afterwards contradicted by Winslow, on his being called by the plaintiff.

There was conflicting testimony as to the credit of the makers of the note at the time of the sale thereof to the plaintiff.

The plaintiff offered to give in evidence the declaration of Winslow concerning the character of the notes, and the parties thereto, at the time of the sale thereof to Stearns and to the plaintiff, but the defendant objected, and the judge refused to receive it.

The jury were instructed, that if the defendant authorized Winslow to sell the notes on the credit of the names of the makers and the first indorser only, the defendant was not

chargeable, although Winslow did sell, and the plaintiff did buy, on the credit of those names and on that of Swan's also.

The plaintiff insisted that the procuring of Swan's indorsement, and the putting of the note into the hands of a broker for negotiation, rendered the defendant liable to any third person who might take the note, if he were ignorant of the fact of Swan's infancy, and placed any reliance on him as indorser, although the defendant, when he put the note into the broker's hands, told him that Swan's name was of no value. But the judge instructed the jury, for the purposes of the trial, and to ascertain a material point in the defence, that if they should be of opinion, from the evidence, that Swan's indorsement was procured with a fraudulent intent, it would not be such a fraud as would make the defendant liable in this action, if, upon the whole evidence, they should find that the defendant had no fraudulent intention when he put the note into circulation.

The jury, after having been out for some time, came into court with a written request for instructions, in these words : " Would the plaintiff be entitled to a verdict, if the fraudulent act was proved to the satisfaction of the jury, provided that there was a doubt in the minds of the jury whether or not that Lobdell was apprized that the name of Swan was not valuable ? " Upon which the judge instructed the jury, that the burden of proof was on the plaintiff to show that he was deceived by the fraudulent conduct of the defendant, and that he gave credit to the name of Swan ; and that if they doubted on that point, their verdict should be for the defendant. A verdict was returned for the defendant.

New trial to be granted, if the judge erred in the admission or rejection of evidence, or in his instructions to the jury.

*Bartlett*, for the plaintiff. The evidence that the defendant was subject to sudden impulses was inadmissible. It respected his moral character only ; not his legal liability. Such evidence can be received only in criminal cases. 2 Stark. Ev. 366. *Potter* v. *Webb*, 6 Greenl. 14. *Humphrey* v. *Humphrey*, 7 Connect. 116. *Howe* v. *Perry*, 15 Pick. 506.

The defendant's declarations, after Swan had indorsed the

notes and left the desk, that he was sorry, &c. should not have been received in evidence, not being part of the *res gesta,* and neither explaining nor elucidating the character of the transaction ; but being merely an expression of regret for a past transaction ; words in his own favor.   *Allen* v. *Duncan,* 11 Pick. 308.   *Enos* v. *Tuttle,* 3 Connect. 250.   *Carter* v. *Gregory,* 8 Pick. 165.

Alden's testimony, as to his conversation with Winslow, only tended to show that Winslow learned from a third person, that Swan's name was of no value.   The defendant cannot give in evidence the declarations of his own agent to his own partner, as to his communications to that agent.   He should have called Winslow as a witness.   The fact, that Alden told Winslow that Swan's name was of no value, was not legal evidence.   The plaintiff could not have shown that another partner of the defendant told Winslow that Swan's name was good.

The instruction to the jury, that the defendant was not liable if he authorized Winslow to sell the note on the credit of the makers and first indorser only, although he did sell on the credit of Swan also, cannot be supported.   Winslow was a general broker, and the defendant therefore liable for his acts, whether authorized or unauthorized.   Story on Agency, 121. 465.   *Pickering* v. *Busk,* 15 East, 38.   Long on Sales, (1st Amer. ed.) 233.

That the form of action adopted in this case warrants a recovery against the defendant, is shown by *Williamson* v. *Alli son,* 2 East, 449, and *Gresham* v. *Postan,* 2 Car. & P. 540. If so, then Winslow's declarations should have been received in evidence for the plaintiff.   Story on Agency, 126.

The instruction was erroneous, that the defendant was not liable, though he fraudulently procured Swan's indorsement, if he intended no fraud when he put the note into circulation.   The defendant was estopped to deny an intent to defraud by circulat· ing what he fraudulently concocted.   The intent is, by law, presumed to continue, so far as civil consequences are in question.   *The King* v. *Dixon,* 3 M. & S. 15.   *Rex* v. *Sheppard,* Russ & Ry. 169.   *Haire* v. *Wilson,* 9 Barn. & Cres. 643.

17 *

But the intent of the defendant is not material. The case of *Tryon* v. *Whitmarsh*, (*ante*, 1,) is not applicable to this. Fraudulent intent is not necessary to charge a defendant, where the plaintiff transfers his property to the defendant on the faith of his representations, express or implied. *Adamson* v. *Jarvis*, 12 Moore, 241. *S. C.* 4 Bing. 66. *Humphrys* v. *Pratt*, 2 Dow & Clark, 288. *Polhill* v. *Walter*, 3 Barn. & Adolph. 114. *Freeman* v. *Baker*, 5 Barn. & Adolph. 797.

*Choate*, for the defendant. The only important question in the case is, whether it be necessary that the defendant should have had a fraudulent intent when he put the note into circulation. As this declaration is framed, the instruction of the judge was correct. Fraud is the gist, the entire gravamen, of the declaration, and proof of mere negligence will not support it. All the cited cases, in which evidence of innocent intent was not permitted to be proved, are those, (it is submitted,) in which an immoral or an illegal act was done, and an injury committed. Such also was the case of *Adams* v. *Paige*, 7 Pick. 549.

If this be so, then the plaintiff's objections to the evidence which was admitted, cannot prevail. The evidence, that the defendant was a man of sudden impulses, tended to prove that no immoral act was done. 1 Stark. Ev. 30. So of the defendant's saying he was sorry that he had procured Swan to indorse. That was also part of the *res gesta.* No right of third persons had intervened before the repentance. *Tompkins* v. *Saltmarsh*, 14 S. & R. 275.

The defendant is said to be liable for Winslow's acts, because he was a general broker. Is the defendant liable for a *fraud*, (as he is charged,) because his agent forgot to state that Swan was a minor, or that his indorsement was of no value ? He is not thus liable on this declaration, if he could be made so on any.

The objection to Alden's testimony, on the ground that Winslow should have been called by the defendant, is answered by the general rule, that any *act done* in the course of a negotiation, may be proved by any witness. This testimony was circumstantial as to the intent ; and it was admissible in contradiction of Winslow, though admitted before he testified. The only

question is, whether its being admitted too soon shall set aside the verdict.

WILDE, J. (After stating the facts.) Upon these facts, the case was submitted to the jury, who returned a verdict in favor of the defendant ; whereupon the plaintiff's counsel excepted to the rulings of the court in the admission and rejecting of the evidence objected to, and to the instructions to the jury.

It was argued for the plaintiff, on the evidence, that the defendant procured the indorsement of Swan for the fraudulent purpose of giving a false credit to the note, and thereby to deceive and injure all such persons as might afterwards purchase the said note, believing the said indorsement to be valid and not voidable.

The defendant's counsel insisted, that there was no sufficient evidence of any fraudulent intent of the defendant in procuring Swan's indorsement; that it was inadvertently done, and the intention of selling the note with Swan's indorsement was immediately abandoned, and when he put the note into the broker's hands, the broker was informed that Swan's name was of no value. It was also contended, that if the jury should find that Swan's indorsement was procured fraudulently, as charged in the declaration, yet the defendant was not liable unless the note was sold and put in circulation with a fraudulent intent. And on this point of defence, the defendant's counsel principally relied. In order, therefore, to ascertain whether the note was sold and put in circulation with a fraudulent intent, the jury were instructed, that, if Swan's indorsement was procured with a fraudulent intent, it would not be such a fraud as would render the defendant liable in this action, if, on the whole evidence, they should find that the defendant had no fraudulent intention when he put the note in circulation.

If this instruction be incorrect, the plaintiff is entitled to a new trial ; for although the jury may have found for the defendant on another ground of defence, namely, that no credit was given to Swan's indorsement, yet this is uncertain, as some of the jurors might have agreed to the verdict on one ground, and some on another ; so that the verdict must be set aside if there

was any material misdirection in the defendant's favor, as to either of the grounds of defence.

The principal question is, whether it was necessary to be shown that the note sued was put in circulation with a fraudulent intent. The argument for the defendant is, that fraud is the gist of the action ; not carelessness or negligence : That the fraudulent intention, if any there was, with which the indorsement of Swan was procured, was immaterial, unless it continued up to the time when the note was sold ; and that the only material question is, whether the sale was fraudulent.

On looking into the abstract of the declaration, we find that it is not averred, that the defendant sold the note with any fraudulent intention. It alleges that the indorsement of Swan was procured by the defendant with such an intention ; and that he offered to sell it to Stearns, who, relying on the indorsement of Swan as effectual, purchased the note of the defendant, and paid him therefor. If, therefore, the argument of the defendant's counsel be well founded, and it is necessary to prove that the sale was made with a fraudulent intent, the defendant might prevail on a motion in arrest of judgment. But if a new trial should be granted, this defect, if it be one, might be supplied by an amendment. This question, therefore, is to be decided without any regard, in this particular, as to the form of the declaration.

Several cases were cited on this point, which we think decisive. In *Adamson* v. *Jarvis*, 12 Moore, 241, it was averred in the declaration, that the defendant, having property of great value in his possession, represented to the plaintiff that he had authority to dispose of it, and the plaintiff thereupon purchased it ; but it was not averred that the defendant knew he had no authority to make the sale. And after a verdict for the plaintiff, it was held that a *scienter* was not necessary ; and the case was distinguished from that class of cases where a party, who has no interest in a matter about which his opinion is applied for, gives an honest though mistaken one, is not responsible. There is no question as to the *scienter* in the present case ; but the decision, in the case cited, shows that a party may render himself

liable in an action for damages to a party prejudiced by a false affirmation, though not made with any fraudulent intention.

Several other cases were cited, by the plaintiff's counsel, to establish a very familiar principle of law, in respect to which there can be no controversy. The principle is, that where a party affirms either that which he knows to be false, or does not know to be true, to another's loss and his own gain, he is responsible in damages for the injury occasioned by such falsehood. This is a very just and reasonable principle, and is well established. The only doubt, if there be any, is, whether it is applicable to the question now to be decided. There was no evidence that the defendant made any express declaration that the note sold was a valid note, and that the makers and indorsers were liable ; but we are all of opinion, that if he fraudulently procured the indorsement of Swan, and then authorized Winslow to sell the note without erasing the name of Swan, knowing, as he did, that Swan was a minor, and not by law liable on the note, all this would be equivalent to an express affirmation that the note was a valid contract, on which the makers of the note and the indorsers were by law liable. A party is to be presumed to have intended the consequences of his own acts. And if the defendant had repented the procuring of Swan's indorsement, to render his repentance effectual he should have erased the indorsement before he put the note in circulation, so that no one might be deceived and defrauded thereby.

For these reasons, we are of opinion that the plaintiff is entitled to a new trial. The same reasons have a bearing also or another question, which may be of importance on a new trial.

The plaintiff offered to give evidence of the declarations and representations of Winslow, made to Stearns and the plaintiff, at the time of the sale of the note, as to the parties to the same. This evidence we think is relevant to the issue, and ought to have been admitted. It was rejected, on the ground that the defendant was not responsible for any misrepresentation made by his agent, without authority, and contrary to the defendant's express instructions. This is undoubtedly the law as to all particular and special agents ; for it is the duty of the person deal-

ing with such an agent, to ascertain the extent of his authority. And if the agent exceeds the limited authority conferred on him, the principal is not bound by his misrepresentations, or any other unauthorized acts, unless the acts so done are within the scope of his authority, in the performance of the act he was authorized by the principal to perform ; or unless the principal had held him out as his general agent ; or as one having a mcre enlarged authority. Story on Agency, 122. But this rule of law is not applicable to the present case ; for the authority of a general agent cannot be limited by any private instructions, unless they were known to the person dealing with him ; and this rule extends to factors and brokers, acting in the line of their employment. And it makes no difference, as Judge Story remarks, whether the factor or broker had been ordinarily employed by the principal, or it is the first instance when he was so employed. This distinction between general and special agents is discussed by Judge Story, with his usual fulness and ability, in his Commentaries on the Law of Agency ; and he approves the rule laid down by Smith, in his work on Mercantile Law, *p.* 59. " A general agent," he says, " is a person whom a man puts in his place, to transact all his business of a particular kind ; thus, a man usually retains a factor to buy and sell goods, and a broker to negotiate all contracts, of a certain description ; and so in other instances. The authority of such an agent to perform all things usual in the line of business in which he is employed, cannot be limited by any private order or direction not known to the party dealing with him. But the rule is directly the reverse concerning a particular agent, that is, an agent employed specially in one single transaction ; for it is the duty of the party dealing with such a one, to ascertain the extent of his authority; and if he do not, he must abide the consequences." Story on Agency, 116, *note.* This seems to be a reasonable rule, which is founded on public policy, and is well supported by the authorities. In the case of *Pickering* v. *Busk*, 15 East, 43, Lord *Ellenborough* says, he could " not subscribe to the doctrine, that a broker's engagements are necessarily, and in all cases, limited to his actual authority ; for it is clear, that he may bind his prin-

cipal within the limits of the authority with which he has been apparently clothed by the principal, in respect to the subject matter ; and there would be no safety in mercantile transactions, if he could not." So *Bayley*, J. remarks, that "if the servant of a horse dealer, with express directions not to warrant, do warrant, the master is bound ; because the servant, having a general authority to sell, is in a condition to warrant, and the master has not notified to the world that the general authority is circumscribed." This doctrine is conformable to the well established principle, that when one of two innocent persons must suffer by the fraud or negligence of a third, he is to bear the loss who enabled the third person to do the injury, by giving him credit, and holding him out to the world as his agent. *A fortiori*, if an innocent person sustains a loss, occasioned by the fraud or misconduct of another person, the latter will be held responsible, although he can show that the loss would not have been incurred, but for the misconduct of a third person, especially if that person is his agent.

There is also another satisfactory reason for admitting evidence of the representations made by Winslow, at the time of the sale of the note ; because the evidence might have an important bearing on the question, whether the plaintiff or Stearns purchased the note, with any reliance on, or giving credit to, the indorsment of Swan. A question upon which, as it seems, the jury entertained some doubts.

As to the admission of the evidence in favor of the defendant, to which the plaintiff excepted, we are of opinion that the exception is not well founded. But the evidence will be of no importance, on the new trial, in consequence of the decision of the court, on the principal question raised by the exception to the instructions to the jury. For if the defendant fraudulently procured the indorsement of Swan, he cannot, in our judgment, exculpate himself, by proving that he repented of his intended fraud ; for it was his duty to erase the name of Swan, so that no person could possibly be defrauded by his indorsement. This evidence undoubtedly affects favorably the defendant's character ; but has no effect on his legal liability, if the indorsement

of Swan were procured by him with the fraudulent intention of putting the note in circulation, and giving to it a false credit. If Winslow was directed not to sell the note on the credit of Swan's indorsement, still if he did represent it as a valid indorsement, the rule in this action applies, *respondeat superior.* This rule is founded on a just and salutary principle of public policy, however hard its operation may be on the defendant, if he did not intend to sell the note on the credit of Swan's indorsement, and it was so sold by Winslow, contrary to the defendant's directions.

*New trial granted.*