Y. D. HARRINGTON, v. W. D. MOORE, ADMINISTRATOR.

Where the authority of an agent was to collect notes, according to a certain agreement, no general words in the letter of attorney, can be held to enlarge the power specially delegated.

Such an authority to collect does not authorize the the agent to negotiate and trade the notes for land.

Error from Rusk. Tried below before Hon. C. A. Frazer.

The intestate sold to the plaintiff in error two slaves for $1100, and took his two notes $550 each. These notes were placed in the hands of one Wm. H. Martin, to whom a power of attorney was executed, by the intestate, " to attend to my

Harrington v. Moore.

business in the State of Texas," and in regard to these notes, particularly, "to collect the same according to the agreement between myself and Y. D. Harrington." The letter of attorney contained the following concluding clause : " Further empowering my said attorney to do and perform any and all things in the premises, that I myself might or could do, were I personally present, acting and doing for myself in proper person, hereby ratifying and confirming any and all the acts and doings of my said attorney, as fully to all intents and purposes as though I had done the same myself."

On the trial, the appellee read the following portion of the appellant's answer : "That during the lifetime of the said plaintiff's intestate ; that he, the said intestate, sold to this defendant the negro slaves, Wade and Celia, for the sum of $1100, for the payment of which sum this defendant executed and delivered to the said intestate his two promissory notes for the sum of $550 each, payable to the said intestate or bearer, on the 1st day of October thereafter, (1853,) which said notes were handed over afterwards by said intestate to one William H. Martin, who is a party defendant thereto, with full instructions and authority to said Martin to allow thereon certain credits, which credits were afterwards entered on one of said notes ; that the delivery of said notes was accompanied by a general letter or power of attorney to said Martin to transact all his business which is hereto annexed, and prayed to be made part of this answer. This defendant was served with a notice from said intestate not to pay the amounts due on said notes, except to said intestate, and defendant avers that some time subsequent to the service of said notice, and after the maturity of said note, they were presented to him by his co-defendant, William O'Hair, and that he paid the same to him, having at the time of said presentation forgotten said notice."

The appellee also proved by Martin that he, Martin, sold the notes on Harrington to O'Hair who was to give $270 in

money and two hundred acres of land, in Rusk county and that he delivered the notes to O'Hair at the time of making the trade. Some time after this transaction, he received notice from Simpson, the intestate, not to act any longer as his attorney. Harrington was in town at the time and knew of the contents of the notice. Witness saw Simpson, the intestate, afterwards, and he said he had nothing to do with giving the notice alluded to ; that it was done by his attorney ; that what he, Martin, had done was right, and he, Simpson, was satisfied with it. It was proved, by another witness, that Harrington had said that he and O'Hair were partners in the purchase of said negroes, and that Harrington had said he was notified not to pay the notes to O'Hair.

The verdict of the jury was for the appellee for the amount of the notes deducting certain credits agreed on, and interest, and judgment was rendered against Y. D. Harrington only for the amount.

*Donly & Anderson,* for plaintiff in error, cited Story on Agency Sec. 228 ; Chitty on Cont. 741, note 3 ; Lawrence v. Dall, 3 Johns. Ch. R. 23 ; Thompson v. Cartwright, 1 Tex. R. 87 ; Platner v. Johnson 3 Hill, 476.

WHEELER, J.  The Court very properly instructed the jury that the power of attorney, from Simson to Martin, did not authorize the latter to assign and transfer the notes to O'Hair. Language, in a letter of attorney, however general, when used in connection with a particular subject matter, will be presumed to be used in subordination to that matter, and is to be construed and limited accordingly. (Story on Agency, Sec. 62 *et seq.*) The authority of the agent, in respect to these notes, was to collect them, according to a certain agreement referred to, allowing certain credits. No general words in the letter

of attorney can be held to enlarge the power specially dele-
gated and limited to the matter of collection, as respects the
notes.   There is no pretence that there was anything in the
power or the agreement referred to, which conferred the author-
ity to negotiate and trade the notes for land.   The negotia-
tion was wholly unauthorized.   Both of the defendants refer
to this power of attorney, as conferring authority to the agent
to sell the notes ; and the defendant O'Hair says it was exhib-
ited to him.   He then was bound to know that the agent was
transcending his authority.   He pretends that there was a
verbal authority and ratification, but it is evident from the
verdict which the jury returned, under the charge of the
Court, that they discredited the evidence by which this was
sought to be established.   Otherwise, under the charge of the
Court, they could not have returned a verdict for the plaintiff.
They were the Judges of the credibility of the witnesses ; and
it was especially their province to decide upon the questions
of fact under the peculiar circumstances of this case.   They
must have been satisfied that O'Hair well knew that Martin
had no authority to transfer the notes, and that it was a mani-
fest fraud on the payee ; and moreover that Harrington was
well apprised of the true character of the transaction, if not
a partner in the pretended purchase of the notes.   Comment
upon the evidence is unnecessary.   It will suffice to say that
we think it sufficient to warrant the verdict.   The law of the
case was sufficiently presented by the instructions given by
the Court, and there was no error in refusing those asked by
the defendants, had they been correct in point of law.   The
first manifestly was not so.   The refusal of the second is no
ground of error, for the reason that the proof did not call for
the instruction.   There was no proof that the plaintiff or his
intestate, or any one authorized by him, had received or held
any obligation of the defendant to make title or pay money
on account of the transfer of the notes.   The evidence did
not prove the receipt of any consideration for the transfer.

The subject matter of the remaining instructions asked by the defendants, was embraced in those given, and in charge of the Court as fully as the evidence warranted.

It is objected by the appellant that judgment was not given against his co-defendant. Upon this point, the Court instructed the jury that he was entitled to a recovery over against his co-defendant, unless the jury believed the transaction grossly fraudulent as between them. Their finding manifests that the jury did so believe ; and the Court therefore very properly declined to interpose between the defendants. Besides, they occupied a friendly attitude upon the record. Though answering separately, they espoused the cause and urged the defence of each other. The attitude they assumed upon the record, and the relation they seem, from the evidence, to have sustained to each other in the transactions out of which the suit arose were not such as to require the Court to interpose between them. (13 Tex. R. 357–8.) The plaintiff may have been entitled to judgment against both ; but he is content with the judgment as rendered. It conforms to the pleadings, and is warranted by the finding of the jury and the proof ; and there is no error of which the appellant can complain. The judgment is affirmed.

Judgment affirmed.