## MICHAEL DIVERSY

*v.*

## EPENETUS B. KELLOGG.

1. AGENCY — *evidence of, for the jury.* Where a party is shown to have been the agent of another in a particular business, and continues to so act within the scope of his former authority, it will be presumed that his authority still continues, and will bind his principal unless the persons with whom he acts have notice that his agency has ceased.

2. SAME. An agent for a commercial house who travels and solicits orders for his principal, in the absence of proof will not be presumed to have authority to rescind his contracts and take back goods furnished by the house for which he is agent, when they prove unsatisfactory to the customer.

3. SALE — *of goods — delivery and acceptance.* If the party of whom goods have been ordered shall ship within a reasonable time, the amount and quality ordered, and in the manner directed, the property thereupon vests in the purchaser and is thenceforth at his risk. If after such shipment a portion of the goods are abstracted and others of an inferior quality substituted so as to render the whole of an inferior quality, in that case the loss must be borne by the purchaser. As soon as such goods are delivered to the carrier the title vests in the buyer subject only to stoppage *in transitu.*

4. SAME. Even if a different kind from that ordered, should be shipped, and is received by the purchaser and he appropriates it, the title thereby vests in him, and he must pay what it is reasonably worth. He would not in that case

be bound to receive it, but, on learning its quality, he should in a reasonable time give notice that he declined to receive it, and thereby avoid liability. In such a case the title would vest in him until he accepted it. In such a case it is for the jury to say from all the circumstances whether he did accept it.

5. AGENT — *general and special.* It is not error for the court to instruct the jury that a party could only recover by showing that the person receiving goods for his principal was his general agent and acted within the scope of his authority, or was his special agent to receive the goods in dispute, unless it was shown that his general agency was continued after his principal ceased to do business. Such an instruction excludes the fact that the person may have the general agency of his principal before he quit business and the seller not notified that he had ceased to be his agent.

6. SALE — *on order* — *notice of shipment.* A party on shipping goods on an order is not bound to give notice thereof to vest the title in the purchaser, or a failure to do so does not relieve the purchaser from the acts of his former agent, or from giving notice that the agency had ceased.

7. EVIDENCE — *admissions of a party.* As a general rule, where admissions of a party are received in evidence generally they are proper for all purposes, and should be considered by the jury and receive such weight as they may deem proper to give them.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of assumpsit brought by Ebenetus B. Kellogg, in the Superior Court of Chicago, on the 25th of February, 1864, against Michael Diversy, to recover the price of a pipe of Cologne gin. The declaration contained the common counts. The defendant pleaded the general issue, with notice of recoupment and set-off. On the 4th of September, 1866, a trial was had before the court and a jury.

It appeared on the trial, that, on the 29th of September, 1862, one James M. Combs, a traveling agent to solicit orders for Kellogg, a wholesale liquor dealer in New York, while in Chicago, received an order from Rose, the son-in-law and general agent of defendant, having charge of his store, and doing business for him. · The order was for three-fourths of a pipe of Cologne gin, and the directions were to ship it by the Western Transportation company's line. The order was filled by plaintiff shipping the gin to defendant. The pipe contained one

hundred and thirty-eight gallons, and was shipped by the transportation company as directed.

The gin reached Chicago by way of the Michigan Southern railroad, before the 18th of November, 1862. After lying some days in the depot, it was sent to the warehouse of Keogh, the agent of lost freight. He mailed a notice to defendant, and the next day Rose went with the notice, representing himself as acting for defendant, paid the charges, receipted for it in defendant's name, and took it away. He at first objected to the charges and threatened to replevy the gin. On the 18th of November, in raising the cask to an upper story of Myers & Turney's store, it fell, and was bursted, and the liquor was lost. It was taken from the freight house to Myers & Turney's, to whom defendant had previously sold his stock.

It appears, that Rose was there after the sale, still engaged in settling the business of defendant, up to the time the gin was lost. Shufeldt says, that at the time it was destroyed, Rose was still acting to all appearances as he had before for defendant, and that he purchased of defendant, or Rose, a pipe of gin about that time. Turney swears that Rose obtained of him permission to store the gin in their house. Shufeldt swears that at the time he purchased the pipe of gin, Rose said that he and defendant had another cask which had fallen through the hatchway. Rose seems to have called on other parties to examine the gin to see if it was according to the sample.

There was testimony that the gin was of inferior quality, and not worth more than one dollar per gallon, instead of two and a quarter, the contract price. Cowles swears, that the gin shipped was of the quality ordered, and worth the sum agreed to be paid. There was testimony, that after the gin was taken into possession by Rose, Combs tried to sell the gin to other persons, saying that it was not satisfactory to defendant.

Defendant asked a number of instructions, the fifth and tenth of which the court refused to give. They are these:

"5. The plaintiff can only hold Mr. Diversy for the acts of Mr. Rose, by showing that, at the time when Rose received the

gin, he was either Diversy's general agent, acting within the scope of his authority, or else that he had specific authority to receive that particular pipe of gin on Diversy's behalf; and unless the jury find from the evidence, that Rose's general agency was continued after Diversy had sold out his business and store to Myers & Turney, or that Rose was specially authorized by Diversy to go to Keogh's and get that particular pipe of gin, Mr. Diversy is not holden for his acts or declarations in the premises, and the law on this point is for the defendant."

" 10. If the transaction was merely a conditional order to send a certain quality of gin, if they could find it, and Diversy received no advice of shipment, he was not compelled to notify plaintiff that Rose's agency had ceased, in order to relieve himself from responsibility for Rose's unauthorized acts, after Diversy had sold out to Myers & Turney."

The defendant's ninth instruction, as asked, is this:

" 9. If a party produces a document containing certain statements which are uncontradicted by other evidence in the case, such uncontradicted statements are, as against the party producing the document, evidence of the facts so stated. If, therefore, Mr. Diversy's affidavit, produced by plaintiff, states that the contract was rescinded, or that Rose's agency had ceased, or any other fact material in the case, such statement of fact is to be presumed to be correct, unless the contrary is proved in the case. The plaintiff can only use Mr. Diversy's affidavit to show admissions against the defendant, and not for the purpose of attacking the defendant's veracity."

The court, however, modified it before it was given by striking out of the latter part of it, this clause:

" The plaintiff can only use Mr. Diversy's affidavit to show admissions against the defendant, and not for the purpose of attacking the defendant's veracity."

The jury found a verdict in favor of plaintiff for $138. Defendant thereupon entered motions for a new trial and in

arrest of judgment, which were overruled and judgment was rendered upon the verdict; to reverse which he prosecutes this appeal, and urges a reversal, because of the refusal to give his fifth and tenth instructions and in modifying his ninth before it was given; because the verdict is against the evidence; and because the motion for a new trial was overruled.

Mr. EDWARD MARTIN, for the appellant.

Mr. G. W. BRANDT, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is first insisted that Rose was not, at the time he received the liquor, paid the charges, and gave the receipt in appellant's name, his agent. The evidence clearly establishes the fact that he was his agent, and had authority to order the liquor in September. And whether he was acting as such, or whether his authority had been revoked when he received this consignment, was a question for the determination of the jury. On that question, the evidence was conflicting. He says it had ceased, but others state that he was attending to appellant's business in closing it up, and he evidently assumed to have authority to act for him, in giving the receipt to the warehouseman in appellant's name, and removing the liquor to his late place of business. Nor does it appear that any person was informed that he had ceased to act as appellant's agent during the time all these transactions were occurring. We are therefore of the opinion, that the jury were warranted in finding that his acts were binding upon appellant.

Whether Combs was authorized to, or did, rescind the contract, and receive the liquor from Rose for appellant, were also questions for the consideration of the jury. And on the first of these questions there seems to be no evidence, unless it can be inferred, that an agent who travels to solicit orders for a commercial house, also has authority to cancel his contracts, and receive back goods shipped to and not satisfactory to a

customer. The nature of the employment would not seem to embrace such authority, and we can not judicially know that it does, and in the absence of proof we can not hold, that it was within the scope of his agency. On the other question, if it were conceded that such an agency embraces the authority to take goods back, after an order has been filled, the evidence is uncertain. Combs seems to have offered to sell the liquor as the property of appellant and not as that of appellee; while Rose says he did take the liquor back. In this conflict it was for the jury to determine, and we are not disposed to disturb their finding.

It is again urged that the liquor was not of the quality ordered, and appellant was not, therefore, bound to accept it.

If appellee shipped, within a reasonable time, the amount and quality of liquor sold to appellant, in the manner directed, the property vested in the latter, and it was at his risk from the time it was shipped. If after shipment, a portion was drawn out by others, and it was filled with other spirits, so as to render it of an inferior quality, then the loss must fall upon the purchaser. As soon as goods are delivered to a carrier, under a contract of sale, the title vests in the purchaser, subject to stoppage *in transitu*, but with no other lien, unless expressed in the terms of the sale. In this case, Combs states, that he knew a good article of imported gin was shipped to appellant, as directed, and if this be true, and the jury seem to have so found, no reason is perceived why appellant should not pay for it.

Or even if a different kind from that which was ordered was shipped, and appellant received it and appropriated it, he thereby made the property his own, and must be held liable to pay what it was reasonably worth, under the common counts.

If it was a different quality from that purchased, he was not bound to accept it, but might, upon learning its quality, within a reasonable time, give notice that he declined to receive it, and thereby avoid liability.

In that case the property would not become his until he accepted it with a knowledge of its quality, or after having a reasonable opportunity of determining its quality. In this

case there is evidence strongly tending to prove an acceptance, and it was for the jury to say whether the appellant did, by his agent, receive the liquor, and retain it an unreasonable time after acceptance, without giving notice that it was rejected. There seems to be no evidence which explains why it was taken from the warehouse, if, as Rose says, " he did not know whence it came." He knew that he had given the order, and must have known the character of the contents of the cask, and we cannot believe, unless some explanation was given, that he did not know that it was from appellee, and he does not pretend that he notified him that the liquor was rejected.

It is insisted that the court erred in refusing to give the fifth instruction asked by appellant. It asserts that appellee could only recover by showing that Rose was appellant's general agent, and acted within the scope of his authority, or was his special agent to receive this pipe of gin ; and, unless he proved that his general agency was continued after appellant sold his store to Myers & Turney, or that Rose was specially authorized to receive the particular pipe of gin. This instruction ignores entirely the fact that if Rose was the general agent of appellant, and as such was acting within the scope of his authority when he ordered the gin of appellee, his acts would still bind appellant within the scope of that authority, after it ceased, until appellee was informed of that fact.

This instruction was therefore properly refused by the court.

The tenth instruction asked by appellant and refused by the court, asserts that if the transaction was merely a conditional order to send a certain quality of gin, if it could be found, and appellant received no advice of shipment, he was not compelled to notify appellee that Rose's agency had ceased, in order to relieve himself from responsibility for Rose's unauthorized acts, after appellant had sold to Myers & Turney. We do not perceive upon what principle the failure of appellee to notify appellant of the shipment, could release him from the acts of his former agent, or relieve him from giving notice that his agency has ceased. We do not know, as a matter of law, that appellee neglected any duty in failing to give notice of ship-

ment, when the goods came in the regular time of transportation. The goods were ordered, shipped and received, so far as we can see, in the usual course of trade, and the failure to advise appellant, in such a case, that the goods had been shipped, released appellant from no liability or duty. We therefore perceive no error in refusing this instruction.

The last clause of the ninth instruction asked by appellant, was not improperly stricken out before it was given. When the admissions of a party are introduced in evidence by the opposite party, as evidence generally, they are proper for all legitimate purposes. When admitted, if inconsistent and contradictory, they might be entitled to but little weight, or if they showed a want of veracity, that would be his misfortune. But in this case his veracity was not in issue, and we do not perceive that this clause of the instruction was pertinent to any issue before the jury. We do not see that any injury resulted to appellant from the modification of the instruction.

After a careful examination of this entire record we perceive no error, and the judgment of the court below must be affirmed.

*Judgment affirmed.*