Opinion by
Will-son, J.
§ 582. Agent; authority of; rules as to; case stated. On the 16th of December, 1880, W. H. North & Co., a business firm at Cooper, Texas, composed of W. H. North and E. T. Pillman, ordered certain goods shipped to them from Freiberg, Klein & Go. at Galveston, Texas. This order was in writing, signed by North & Go., and was made through one Levy, an agent of said F., K. & Go.- It called for one-half barrel of blackberry brandy, one-half barrel of apple brandy, and ten gallons of peach brandy, and stipulated that payment therefor should be made at Galveston at the expiration of ninety days. . Upon this order F., K. & Co. shipped the goods December 21, 1880, and on the same day forwarded to N. & Go. an invoice bill of the same, by mail.' March 1, 1881, Pillman withdrew from the firm of N. & Go. March 9, 1881, one Swan, who was a traveling salesman for F., K. & Go., being at Cooper, was notified by N. & Go. of the dissolution of said firm, and that N., alone, was carrying on the business; and that the said goods had not been accepted by said firm, because more had been sent than had been ordered, and because the same had been delayed about one month in reaching their destination; and that said goods were still in the warehouse of the railroad company. Swan thereupon proposed to N. to take the goods on his, N.’s, own account, saying that if he would do so, *513 P. should be released from all liability therefor. N. refused to take them unless the time for payment was extended. Swan then agreed to extend the time of payment and let the debt fall due. at the same time that another bill of goods, which it had just ordered, should fall due, which was at the expiration of sixty days from that date. Thereupon N. took the goods upon his individual responsibility, the understanding of all the parties being that P. was released from all liability for the same.
On March 12, 1881, Swan forwarded N.’s order for goods to F., K. & Oo., and in a letter inclosed therewith informed them that the firm of N. & Oo. had dissolved; that said firm had refused to accept the goods ordered through Levy; that he had prevailed on N. to take said goods, to be paid for when the bill then ordered matured. On March 15, 1881, the bill of goods ordered through Swan was shipped by F., K. & Oo. to N., but no mention was made about the arrangement had by him with Swan as to the goods ordered by N. & Co., nor did F., K. & Oo. respond to Swan’s letter in regard thereto; nor did they inform either N. or P. that the said arrangement made with Swan was not satisfactory. On March 21, 1881, F., K. & Oo. wrote to N. & Oo. demanding payment of the amount due on the Levy bill of goods. March 31, 1881, N. answered said demand, informing them of the arrangement made with Swan. April 11, 1881, F., K. & Oo. again demanded payment of N. individually. June 1, 1881, this suit was instituted in justice’s court in G-alveston county. N. made no answer in the suit. P. pleaded specially, under oath, that he did not contract to pay for said goods; that he was not a member of the .firm of N. & Oo. at the time said debt was contracted; and that every item of said indebtedness was, as to him, unjust and untrue. He also pleaded his privilege to be sued in the county of his residence. In justice’s court and also in the county court, F., K. & Oo. recovered judgment against N. and P. for the debt sued for, interest and costs, and P. alone appeals to this court.
*514 The trial judge held that Swan acted without authority in making the arrangement stated with N. and P. This holding was correct. An agent for a commercial house, who travels and solicits orders for his principal, in the absence of proof, will not be presumed to have authority to rescind his contracts and take back goods furnished by the house for which he is agent, when they prove unsatisfactory to the customer. [Diversey v. Kellogg, 44 Ill. 114.] So, a mere authority to collect debts, i or to collect and distribute, does not imply authority to release them without payment. [Herring v. Hottendorf, 74 N. C. 588; Melvin v. Lamar Ins. Co. 80 Ill. 446.] Nor does an authority to receive payment of a debt include authority to extend the time of payment [Hutchings v. Hunger, 41 N. Y. 158; Chappel v. Raymond, 20 La. Ann. 277; Gerrish v. Maher, 70 Ill. 470], or to receive payment in anything but money. [Robson v. Watts, 11 Tex. 768; Harrington v. Moore, 21 Tex. 549; W. & W. Con. Rep. § 1066.] There was no evidence that Swan had authority to make such arrangement with N. and P. On the contrary it is shown that he had no such authority, general or special, although he and they evidently believed at the time that he did have such authority. Such belief, however, cannot supply such authority, and make his unauthorized acts binding upon his principals, unless afterwards ratified by them.
§ 583. Ratification of agent’s act. The trial judge concluded, as matter of law, that F., K. & Co. had not ratified the act of their-agent, Swan; that is, the arrangement made by him with N. and P. about the goods. In this conclusion there was error. There was no express ratification, but the evidence shows an implied one. They received notice from Swan of the arrangement he had made about the goods. They did not notify said agent or P. that they were dissatisfied with, and did not agree to, such arrangement. They forwarded to N. the other goods ordered by him at the same time they received said notice. Six days thereafter they demanded *515 of N. & Go. payment for the first goods. When a person assumes to act .in good faith as agent for another in any given transaction, but acts without authority, whether the relation of principal and agent does or does not exist between them, the person in whose behalf the act was done, upon being fully informed thereof, must, within a reasonable time, disaffirm such act, at least in cases where silence might operate to the prejudice of innocent parties, or he will be held to have ratified such unauthorized act. [Miller v. Ex. Stone Co. 1 Bradwell (Ill.), 219; Saveland v. Green, 40 Wis. 431.] And where the relation of principal and agent exists, although in the particular transaction the agent has exceeded his authority, an intention to ratify will always be presumed from the silence of the principal who has received a letter informing him of what has been done on his account. [Ewell’s Evans on Agency, 90, and cases cited in note 1.] “In the ordinary course of business between merchants and their correspondents, it is understood to be the duty of one party receiving a letter from the other, to answer the same within a reasonable time; and if he does not, it is presumed that he admits the propriety of the acts of his correspondent, and confirms and adopts them. This presumption seems now, in favor of commerce, to be universally acted upon. And, therefore, if the principal, having received information by letter from his agent of his acts touching the business of his principal, does not, within a reasonable time, express his dissent to the agent, he is deemed to approve his acts’, and his silence amounts to a ratification of them.” [Story on Agency, § 258.] In this case the evidence fails to show that E., K. & Co. repudiated the act of their agent, Swan, within a reasonable time after being informed thereof, and, having failed to do this, their silence-amounted to an implied ratification of his act.
March 4, 1885.
Reversed and remanded,